UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**BRIAN HADLEY**,                                    Civil Case No. 3:12-CV-00718-KI

                   Plaintiff,                    OPINION AND ORDER

     v.

**CAROLYN W. COLVIN**, Acting
Commissioner, Social Security
Administration,

                 Defendant.

     Merrill Schneider
     Schneider Caver Law Offices
     P.O. Box 14490
     Portland, OR 97293

           Attorney for Plaintiff

     S. Amanda Marshall
     United States Attorney
     District of Oregon
     Adrian L. Brown

Page 1 - OPINION AND ORDER

Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97201-2902

Franco L. Becia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 SW Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Brian Hadley brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner[1] denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for a finding of disability.

## BACKGROUND

Hadley filed applications for DIB and SSI on November 14, 2008, alleging disability

beginning November 30, 2006.  The applications were denied initially and upon reconsideration.

After a timely request for a hearing, Hadley, represented by counsel, appeared and testified

before an Administrative Law Judge ("ALJ") on November 30, 2010.

On December 9, 2010, the ALJ issued a decision finding Hadley was not disabled within

the meaning of the Act and therefore not entitled to benefits.  This decision became the final

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is
substituted for Michael J. Astrue as the defendant in this suit.

decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on March 2, 2012.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

Page 3 - OPINION AND ORDER

§§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.

2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

The ALJ found Hadley had the following severe impairments: borderline intellectual

functioning; depressive disorder NOS; alcohol dependence vs. abuse, in claimed remission;

chronic obstructive pulmonary disease; and knee osteoarthritis. The ALJ also found that these

impairments, either singly or in combination, did not meet or medically equal the requirements of

any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ concluded

Hadley could perform light work except he was limited to only occasional kneeling, crouching,

or crawling, and he was limited to routine, repetitive unskilled work. Based on the testimony of

a vocational expert ("VE"), the ALJ determined that someone with this residual functional

capacity ("RFC") could perform Hadley's past work of gas station attendant.

## FACTS

Hadley, who was 48 years old at the time of the hearing, has an education through the

eleventh grade. He never obtained his GED. He attended special education classes from the

sixth grade through high school. He worked pumping gas on and off for 17 years, but he lost his

last job because he was drinking and missing work.  At the time of the hearing he was living with his mother and caring for her, and he had been sober for two years.

Other than Hadley's intellectual capabilities, Hadley's medical history is not relevant to the single issue he raises in his appeal.  As a result, I do not summarize it.

Dr. Daniel L. Scharf, Ph.D., a clinical psychologist, examined Hadley on May 15, 2008 at the request of Disability Determination Services.  During the interview, Hadley explained he was living alone in an apartment (provided by an organization supporting transition from homelessness), he had been homeless for four or five months before moving into the apartment, and had lived with his mother prior to that.  He described a history of special education starting in the sixth grade, that he did not graduate because he got mixed up with the wrong crowd, that he "reported obtaining C's and D's in his classes and having difficulties with reading.  He said he is able to read, although on a limited basis.  The claimant denied any significant behavioral problems in school."  Tr. 384.  He reported having two beers once a week.  Dr. Scharf found it "unlikely the claimant would be able to sustain controlled alcohol use without treatment or abstinence."  Id.

Hadley had been married for eight years, but they only lived together one or two years.  He was arrested in 1992 due to a sex offense involving his step-daughter.  He showered every other day, cleaned his apartment, cooked and shopped for himself, and used the bus.  He had trouble managing money.  He presented "somewhat silly and immature at times," and exhibited "mildly odd thinking," but was clear and easily understandable.  Tr. 386.  He was described as "childlike[.]"  Id.  He had trouble with tasks requiring short-term memory, and he was distractible.  Test results demonstrated a Verbal IQ of 67 (Extremely Low), Performance IQ of 72

(Borderline), Full Scale IQ of 66 (Extremely Low), Verbal Comprehension of 70 (Borderline),

and Perceptual Organization of 72 (Borderline).  Dr. Scharf diagnosed Depressive Disorder NOS,

Alcohol Dependance in Partial Sustained Remission by Report, and Borderline Intellectual

Functioning.  He opined, "His intellectual level is probably best described as falling at the lower

end of the borderline range of intellectual functioning.  He has some areas of relatively good

adaptive behavior, such as having been married in the past, living independently, and working off

and on for seventeen years."  Tr. 387.  Finally, his "presentation during the testing and interview

are consistent with past medical records and his reports of special education."  Id.

About a month later, Hadley was arrested for failing to register as a sex offender.  He met

with Dr. Norvin R. Cooley, Ph.D., who examined him at Hadley's attorney's request, in August

2008.  At the time of his arrest, Hadley had slurred speech and smelled of alcohol.  He was

homeless, living in missions downtown.  At the time of the evaluation, he had been sober for a

month.  IQ scores were similar to those obtained by Dr. Scharf, with an overall IQ of 69.  Dr.

Cooley noted Hadley's "full scale intellectual functioning [was] in the range of mild mental

retardation and at the second percentile."  Tr. 395.  His academic functioning was in the second

to fourth grade range.  Dr. Cooley noted Hadley's exhibited slow thinking during the interview

"and at times confused. . . . Thoughts and verbalizations did not progress logically.  Thoughts

wandered."  Tr. 393.  Dr. Cooley diagnosed Borderline Intellectual Functioning, but noted "[h]is

IQ scores are actually in the range of mild mental retardation.  I have utilized a diagnosis of

borderline intellectual functioning because it appears that his adaptive skills may be higher than

those often found in those diagnosed with mental retardation.  Since we have no external

corroboration of his adaptive skills I have used a rule out diagnosis of mild mental retardation."

Page 7 - OPINION AND ORDER

Tr. 397.  Additionally, Dr. Cooley opined, "[H]e is as noted of significantly lower than average in cognitive functioning and may in fact be mentally retarded . . . . Given his symptoms, when Mr. Hadley says he lives much of his life in a daze, he is probably quite accurate in his description." Tr. 397.

## DISCUSSION

The only issue in this case is whether the ALJ erred in neglecting to analyze and find Hadley disabled under Listing 12.05C, mental retardation.

The listings set out at 20 CFR pt. 404, Subpart. P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect."  Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990).  For a claimant to show that his impairment matches one of those listed, the impairment must meet all of the specified medical criteria.  Id. at 530.  "A generalized assertion of functional problems is not enough to establish disability at step three."  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999).  If a claimant's impairment meets a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he can actually perform prior work or other work. Sullivan, 493 U.S. at 532.  Hadley bears the burden of proving that he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Hadley focuses on Listing 12.05C, a listing the ALJ did not address, which reads as follows:

> 12.05  Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with [1] deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or

supports onset of the impairment before age 22.  The required level of severity for
this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C.  [2] A valid verbal, performance, or full scale IQ of 60 through 70 and [3] a
physical or other mental impairment imposing an additional and significant
work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1 (emphasis and numbering added).

The Commissioner does not dispute that Hadley meets the second and third prongs of the

listing.  Specifically, Dr. Scharf and Dr. Cooley obtained IQ scores in the 60 to 70 range.  See 20

C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c) ("[i]n cases where more than one IQ is

customarily derived from the test administered, e.g., where verbal, performance and full scale

IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.").

Additionally, the ALJ concluded Hadley suffered from other physical and mental impairments,

even setting aside Hadley's limited intellectual capabilities, which satisfy the third prong.

Fanning v. Bowen, 827 F.2d 631, 634 (9th Cir. 1987).

The only dispute between the parties is whether Hadley demonstrated "deficits in

adaptive functioning" "before age 22."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  Hadley

argues his "deficits in adaptive functioning" manifested from at least sixth grade on since he was

in special education classes and dropped out of high school.  He believes the report cards in the

record demonstrate his low intellectual functioning from an early age.  Tr. 281-297.  He argues

his functional and vocational abilities are irrelevant to the listing determination.

The Commissioner defines "adaptive functioning" as "how effectively an individual

copes with common life demands and how well he meets standards of personal independence."

Def.'s Br. 7 (citing Am Psych. Ass'n. Diagnostic & Statistical Manual of Mental Disorders 41-42 (4th ed. Text Revision 2000).  According to the Commissioner, the ALJ, in analyzing Hadley's RFC, commented that Hadley had been able to work despite his borderline intellectual functioning, and could take care of his mother, cook meals, do the laundry and shop.  The Commissioner theorizes, "You would not expect these types of activities from an individual suffering from mental retardation."  Def.'s Br. 8.  Indeed, Hadley lost his job because of drinking, not because of his intellectual difficulties.  Citing cases from out of circuit in which courts have required a diagnosis of mental retardation, the Commissioner underscores that Dr. Cooley and Dr. Scharf diagnosed borderline intellectual functioning and not mental retardation. In fact, Dr. Scharf noted "some areas of relatively good adaptive behavior[.]"  Tr. 387.  Finally, the Commissioner interprets Hadley's school records as demonstrating Hadley's satisfactory performance in all major subject areas.

As an initial matter, district courts in the Ninth Circuit, including the District of Oregon, have determined Listing 12.05C does not require a formal diagnosis of mental retardation.  Pedro v. Astrue, 849 F. Supp. 2d 1006, 1010 (D. Or. 2011); Lloyd v. Astrue, No. 3:11-cv-00951-RE, 2012 WL 4794152, at *2 (D. Or. Oct. 5, 2012) (no formal diagnosis of mental retardation irrelevant); Brooks v. Astrue, No. 3:11-cv-01252-SI, 2012 WL 4739533, at *5 (D. Or. Oct. 3, 2012) (same); Vieira v. Colvin, No. 2:11-cv-02342 KJN, 2013 WL 1195287, at *5 (E.D. Cal. Mar. 22, 2013) (citing cases from the Eighth Circuit, Eastern and Western Districts of Washington, and the Northern District of California for same proposition).

An unpublished Ninth Circuit case suggests many of the same facts Hadley raises may be used to evaluate whether "the impairment began before the end of the developmental period[.]"

Hernandez v. Astrue, 380 Fed. App'x 699, 700-01 (9th Cir. May 28, 2010) (repeated fourth grade, poor grades in school, no high school attendance, and no evidence plaintiff's cognitive function had degraded over time).  See also Lloyd, 2012 WL 4794152, at *3 (qualified for special education in kindergarten, serious emotional disturbance, expelled from eighth grade, low grades); Brooks, 2012 WL 4739533, at * 6 (valid adult IQ score "can be reflective of an impairment that manifested during the claimant's developmental period" and citing cases relying on special education courses, grades, and medical expert testimony); Pedro, 849 F. Supp. 2d at 1014 (special education classes, difficulties in reading, writing, or math, and low skilled work history relevant); Vieira, 2013 WL 1195287, at *6 (adopting rebuttable presumption that a valid adult IQ score means the impairment existed before the age of 22) (citing cases from Eleventh Circuit, Eighth Circuit, Fourth Circuit, and district courts in California).

Hadley's history of special education, dropping out of high school, current testing in reading and math at the second to fourth grade level, and low skilled work history as a gas station attendant all suggest an early onset of low mental functioning.  Indeed, even before special education classes in the sixth grade, teachers commented that Hadley was working "below grade level in all areas."  Tr. 285; 286 ("no noticeable improvement in work habits or any other area of work"); 287 ("still finds school very difficult" and "achieving below grade level in all areas"); 293 ("he just can't function in a regular class situation").  No medical evidence supports a proposition that Hadley's intellectual functioning declined over time.

In evaluating the appropriate remedy, I have considered the following factors:

When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.  We may exercise our discretion and direct

an award of benefits where no usual purpose would be served by further
administrative proceedings and the record has been thoroughly developed.
Remand for further proceedings is appropriate where there are outstanding issues
that must be resolved before a determination can be made, and it is not clear from
the record that the ALJ would be required to find the claimant disabled if all the
evidence were properly evaluated.

Hill v. Astrue, 698 F.3d 1153, 1162-63 (9th Cir. 2012) (internal quotations and citations omitted).

Since all of the objective evidence supports a finding that Hadley meets Listing 12.05C

for mental retardation, and additional proceedings are unnecessary to confirm Hadley meets the

criteria, this is the "rare" case where the ALJ's decision is reversed for a finding of disability.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the

Commissioner for a finding of disability. Judgment will be entered.


IT IS SO ORDERED.

DATED this ____9th____ day of April, 2013.


   /s/ Garr M. King
Garr M. King
United States District Judge

Page 12 - OPINION AND ORDER